# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD GOLDEN,<br><br>   **Plaintiff,**<br><br>  v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>   **Defendant.** | Civ. No.: 18-12196<br><br><br>OPINION |

### WILLIAM J. MARTINI, U.S.D.J.:

This matter comes before the Court on Plaintiff Richard Golden's ("Plaintiff") appeal of a decision by Defendant Commissioner of Social Security ("Defendant" or "Commissioner") ruling him not disabled. For the reasons set forth below, the appeal is **DENIED**.

## I. BACKGROUND

Plaintiff applied for supplemental security income on July 16, 2014, alleging he had been disabled since November 15, 2011. Admin. Rec. ("AR") at 13, ECF No. 11. Plaintiff's application was denied initially and on reconsideration. *Id.* On Plaintiff's request, Administrative Law Judge David Neumann ("ALJ") presided over a hearing held by video conference. *Id.* Plaintiff and his counsel appeared from Newark, New Jersey. *Id.*

The ALJ issued an unfavorable decision on July 25, 2017 ("Decision"), finding Plaintiff was not disabled. AR at 24. Plaintiff appealed to the Appeals Counsel. On June 11, 2018, the Appeals Council denied Plaintiff's appeal, making the ALJ's Decision the final, appealable decision of the Social Security Administration ("SSA"). Plaintiff then filed suit in this Court pursuant to 42 U.S.C. § 405(g), which confers the Court with jurisdiction.

## II. DISCUSSION

The ALJ issued his Decision pursuant to the five-step sequential analysis applicable to determinations of benefits eligibility. Plaintiff challenges various aspects of the ALJ's determination. The sequential analysis, the ALJ's Decision, and each of Plaintiff's specific challenges is discussed below.

### A. Five-Step Sequential Analysis

The SSA has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe

impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. *Id.* Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. *Id.* §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

## B.    The Administrative Law Judge's Decision

The ALJ's Decision proceeds deliberately through the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR at 15. At step two, the ALJ found Plaintiff had six severe impairments: degenerative disc disease of the lumbar spine, asthma, diabetes, hypertension, obesity, and depression with anxiety. *Id.* Despite those severe impairments, the ALJ determined at step three that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [the applicable regulation]." AR at 16. Because Plaintiff did not fit into one of the listed impairments, the ALJ had to determine whether Plaintiff had the RFC to perform past relevant work (step four) and if not, whether he was capable of performing other jobs that exist in significant numbers in the national economy (step five). Because Plaintiff did not have any past relevant work, once the ALJ calculated Plaintiff's RFA, he proceeded directly to step five, making use of a vocational expert to determine Plaintiff's ability to perform available jobs. AR at 23-24.

## C.    Plaintiff's Appeal of the Decision and the Applicable Standard

Plaintiff challenges three portions of the ALJ's Decision: (1) that Plaintiff was capable of light work; (2) the level of consideration given to Plaintiff's obesity; and (3) the relative weight afforded to the various doctor-witnesses. Pl. Br. at 22-40, ECF No. 15. Further, because (Plaintiff asserts) he was not able to perform light work, Plaintiff argues (4) he should have been deemed disabled under the grids and, in any event, (5) there is "good cause" to remand the case. *Id.* at 40-42. The Government filed an opposition brief responding to each of Plaintiff's arguments, ECF No. 18, and Plaintiff filed a reply, ECF No. 19.

In May 2019, after briefing was complete, the case was reassigned to Judge McNulty. ECF No. 20. In August, the case was reassigned to the undersigned. The Court has plenary review of legal issues. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (cleaned up). Findings of fact, on the other hand, will be affirmed if "there is substantial evidence to support such findings." 42 U.S.C. §§ 405(g) & 1383(c). Courts are not permitted to re-weigh the evidence or impose their own factual determinations. *Chandler*, 667 F.3d at 359 (cleaned up). Instead, "substantial evidence" only requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

## 1.    *Capable of Light Work*

Plaintiff argues the ALJ's determination that he was "capable of light work was erroneous and was not based on substantiation evidence." Mot. at 22. Specifically, Plaintiff challenges the ALJ's determination that he "'has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 416.967(b).'" *Id.* (purportedly quoting AR at 17). The Court rejects Plaintiff's challenge, as the ALJ made no such determination and substantial evidence supports the actual RFA determination made.

The Court cannot locate the (purportedly) quoted language in the ALJ's Decision. Page 17 of the administrative record—cited by Plaintiff—discusses whether Plaintiff's symptoms meet or equal a listed impairment. *See* AR at 17. Likewise, if Plaintiff intended to cite to the ECF page number, that portion also discusses whether Plaintiff met the requirements of a listed impairment, not RFA. *Id.* at 16 (ECF No. 11-2 p.17). The ALJ did determine Plaintiff was capable of light work *with* certain restrictions, specifically:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can perform simple, routine, repetitive work at a specific vocational preparation of 1 or 2 and have occasional interaction with supervisors and coworkers, and occasional changes in the work setting, and no travel beyond commuting to and from work. He can lift and carry to pounds frequently and 20 pounds occasionally, sit for six hours, with normal breaks, in an eight-hour workday and stand and/or walk two hours, with normal breaks, in an eight-hour workday. He can perform pushing and pulling motion with his upper and lower extremities within the aforementioned weight restrictions. He can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl and he should avoid concentrated pollutants and temperature extremes.

AR at 19-20. Because there is substantial evidence to support this conclusion, the Court will not overturn the ALJ's Decision. *See* AR at 20-23; 42 U.S.C. §§ 405(g) & 1383(c).

With respect to Plaintiff's asthma, the ALJ pointed out that medical treatment records showed clear lung sounds and no crackles or wheezes. *Id.* at 21. Similarly, with respect to Plaintiff's chest pain, weakness, and high blood pressure, the ALJ noted symptoms consistent with chronic hypertensive disease. *Id.* However, the record did not demonstrate uncontrolled symptoms or resulting complications. *Id.* The ALJ further acknowledged Plaintiff's obesity and back pain but pointed out Plaintiff's clinical, objective musculoskeletal findings were unremarkable, while he had a relatively normal gait, station, sensation, strength, and tone. *Id.* The ALJ specifically cited the assessment of Dr. Rahel Eyassu, AR at 326-338, who found Plaintiff was "in no acute distress," "can walk at a reasonable pace," has a "normal" station, "[s]quats halfway," "is able to do heel to toe walking," and "uses no assistive device." AR at 327. In addition, the ALJ relied on agency medical consultant Dr. Jose Rabelo, who found Plaintiff could perform light work. AR at 74. The ALJ further relied on Dr. Andrew Pryzybla's opinion, another state medical consultant that reviewed Plaintiff's record. AR at 22. Like Dr. Rabelo, Dr. Pryzbla found Plaintiff was able to perform light work. AR at 90.

Plaintiff's citation to various evidence supporting a finding that he was *not* capable of light work is insufficient to justify a remand. Even assuming the evidence could support such a finding, the Court is not permitted to re-weigh evidence or impose its own factual determinations. *See Chandler*, 667 F.3d at 359. Substantial evidence supports the ALJ's determination regarding Plaintiff's ability to perform light work with certain additional restrictions. Further, the ALJ adequately considered Plaintiff's limitations in combination. AR at 20 ("[T]he residual functional capacity has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments."). Therefore, the Decision will not be overturned on this basis. *See* 42 U.S.C. §§ 405(g) & 1383(c).

## 2. *Consideration of Plaintiff's Obesity*

The second reason Plaintiff posits to overturn the ALJ's Decision is that he "did not give proper consideration to [Plaintiff's] obesity." Mot. at 30. Specifically, Plaintiff complains that after the ALJ noted his weight, body mass index ("BMI"), gait, station, sensation, strength, and tone, the ALJ "did not factor in [Plaintiff's] obesity at all in making his determination that [he] was not disabled." *Id.* (quoting AR at 21). Once again, Plaintiff misreads the Decision.

The ALJ appropriately factored Plaintiff's obesity into his determination. *See* SSR 02-1p (requiring consideration of the effect of obesity) (rescinded as of May 20, 2019, after the Decision was rendered). In finding Plaintiff's conditions did not meet or equal the severity of one of the listed impairments, the ALJ noted "consideration has been given to claimant's obesity." AR at 16. And as discussed above, the ALJ calculated Plaintiff's RFA "based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all of [Plaintiff's] medically determinable impairments." AR at 20. The ALJ specifically noted Plaintiff's BMI and its effect on his ability to move normally. *See* AR at 21. Further, the Decision notes Dr. Joseph Vitale's finding that Plaintiff is obese and unable to work. *Id.* While the ALJ rejected Dr. Vitale's conclusion regarding Plaintiff's ability to work (as it is reserved for the Commissioner), the ALJ cited Dr. Vitale's obesity determination before concluding that "[t]he record does not document any objective findings which would prevent [Plaintiff] from performing the established [RFA]." *Id.* In short, the ALJ gave proper consideration to Plaintiff's obesity, and the Decision will not be overturned on that basis.

## 3. *Relative Persuasiveness of Doctors' Conclusions*

Plaintiff's third reason for overturning the Decision is the relative weight the ALJ gave the opinions of various doctors. Specifically, Plaintiff complains that:

> The [ALJ] gave the opinions of the four doctors employed by the Social Security Administration that did not examine Mr. Golden and made their decisions based only on the evidence contained in the record more weight than he did Mr. Golden's two treating doctors and the three doctors employed by the Administration that examined Mr. Golden rather than just examined the record.

Mot. at 35-36. Thus, Plaintiff argues, the ALJ violated 20 C.F.R. § 416.927(c).

4

Under Section 416.927(c), which is applicable to claims filed before March 27, 2017, the SSA "generally" gives more weight to medical opinions from "examining" sources than non-examining sources, and from "treating" sources than non-treating sources. *Id.* § 416.927(c)(1)-(2). If the SSA finds "that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the SSA] will give it controlling weight." *Id.* § 416.927(c)(2).

When the SSA does not give a treating source's medical opinion controlling weight, it applies various factors to determine what weight to give the medical opinion. *Id.* Those factors are (1) the length and frequency of the treating relationship; (2) the nature and extent of the treating relationship; and, applicable to the relative weight afforded all medical opinions; (3) the supportability of the opinion; (4) its consistency with the record as a whole; (5) relevant specialization from the source; and (6) other relevant factors. *Id.* § 416.927(c)(2)-(6).

Here, Plaintiff is correct that the ALJ afforded more weight to non-examining and non-treating sources, which is contrary to the *general* practice of the SSA. *See id.* § 416.927(c)(1)-(2) ("Generally, we give more weight . . .). However, as noted, Section 416.927 does not mandate that the SSA give treating physicians' opinions controlling weight if those opinions are either (1) not supported by medically acceptable clinical and laboratory diagnostic techniques or (2) inconsistent with other substantial evidence.

### a.   Medical Opinions Regarding the Effect of Mental Impairments

Plaintiff argues the ALJ erred in affording Plaintiff's treating therapist less weight than the examining mental-health doctor employed by the SSA, who's opinion likewise received less weight than a non-examining consultant.

The ALJ gave the opinion of Dr. Alan M. Schreiber, Plaintiff's long-time therapist, little weight because he "did not provide an opinion regarding functional mental limitations or capabilities and only opined that the claimant was disabled." AR at 19. The ALJ found that Dr. Schreiber's conclusions regarding the severity of Plaintiff's panic attacks and depression lacked support in other parts of the record. *Id.* Further, according to the ALJ, if Plaintiff's "mental symptoms were unrelenting and as severe as indicated by Dr. Schreiber, it is reasonable to conclude that he would have recommended more frequent sessions or further specialized psychiatric treatment including medications to help alleviate the claimant's severe symptoms." *Id.* The ALJ also reached his conclusion after finding other medical opinions which contradicted Dr. Schreiber's conclusion highly convincing, the propriety of which is discussed below. *Id.*

Because Dr. Schreiber's conclusions were either reserved for the Commissioner, inconsistent with other substantial evidence, and not supported by medically acceptable clinical and laboratory diagnostic techniques, the ALJ was not required to give them controlling weight. The opinion that Plaintiff was disabled is explicitly reserved for the Commissioner to determine. 20 C.F.R. § 416.927(d)(1). Other medical opinions, discussed below, contradicted Dr. Schreiber's conclusions regarding the nature and severity of Plaintiff's mental disorder, and thus his opinion is inconsistent with other substantial evidence. *See id.* § 416.927(c)(2). As to clinical and laboratory diagnostic techniques, while Dr. Schreiber kept notes of his consultations with

Plaintiff and reached conclusions regarding his condition, AR at 408, 412-413, Plaintiff did not point to any objective tests or analysis performed. Therefore, the ALJ was not required to treat Dr. Schreiber's opinion as controlling. *See* 20 C.F.R. § 416.927(c)(2), (d). And for the reasons stated below, the ALJ gave permissible reasons for giving significant weight to other medical evidence. Finally, the RFA assigned limited permissible jobs to "simple, routine, repetitive work at a specific vocational preparation of 1 or 2 and have occasional interaction with supervisors and coworkers, and occasional changes in the work setting, and no travel beyond commuting to and from work." AR at 19. Therefore, the RFA provided relatively significant limits to accommodate Plaintiff's mental impairments.

The ALJ also permissibly gave non-treating sources' opinions significant weight. He gave "great weight" to Drs. Golin and Logan, both non-examining doctors employed by the SSA. As to Dr. Golin, the ALJ explained that (1) "he provided a detailed evaluation of the evidence and specific functional limitations and capabilities"; (2) as a state agency consultant, he is highly qualified in evaluating medical issues in disability claims; and (3) "his opinion regarding the nature and extent of [Plaintiff's] mental limitations is supported by clinical findings, overall medical history, and the [Plaintiff's] own reports." AR at 19. The ALJ gave Dr. Logan's opinion great weight because "it is consistent with the evidence and Dr. Golin's opinion." *Id.* These rationales are explicitly recognized in Section 416.927. *See* 20 C.F.R. 416.927(c)(3) (the weight given to non-examining sources "will depend on the degree to which they provide supporting explanations for their medical opinions"), (c)(4) ("the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"), (c)(6) ("the amount of understanding of our disability programs and their evidentiary requirements that a medical source has . . . and the extent to which a medical source is familiar with the other information in your case record are relevant factors"). Accordingly, the ALJ was not in error.

As to the examining doctors, the ALJ gave their opinions "some weight." AR at 19. While Drs. Iskandarani and Arrington examined Plaintiff, they were not treating physicians, and thus their opinions were not controlling. 20 C.F.R. § 416.927(c)(2). Further, the opinions were not specific and thus less convincing. The ALJ also permissibly gave Dr. Iskandarani's global assessment score some weight. The conclusions did not correlate to the severity requirements of the listings, but the ALJ appeared to take seriously that Dr. Iskandarani's opinion was "consistent with moderate limitations and the totality of the evidence," because the ALJ provided significant, non-physical limitations in Plaintiff's RFA. *See* AR at 19-20. In sum, the ALJ provided permissible reasons for crediting and discounting various medical opinions, the basis of which was supported both by law and record evidence.

### b. Medical Opinions Regarding the Effect of Physical Impairments

Plaintiff similarly objects to the ALJ's treatment of evidence provided by treating Dr. Joseph Vitale. Specifically, Plaintiff argues the ALJ's "finding that Dr. Vitale's opinion did not document any objective findings that would prevent Mr. Golden from performing the established [RFA] was erroneous and was not based on substantial evidence." Mot. at 39. Plaintiff goes on to explain that Dr. Vitale kept detailed records of Plaintiff's visits, tests, exams, reported problems, surgeries, family history, allergies, adverse reactions, and prescribed medications. *Id.*

Plaintiff's argument faulters because he fails to connect the records cited to the inability to perform the modified, light work the RFA allows for. *See* AR at 19-20. Plaintiff simply lists categories of information that would exist in almost any individual's medical records (including those of a healthy individual capable of heavy work), cites over 200 pages of the record without explanation, and concludes "[i]t would be difficult to imagine how Dr. Vitale could better document objective findings that would prevent Mr. Golden from performing the established [RFA]." *See id.*

The ALJ provided legitimate reasons not to be bound by Dr. Vitale's opinion: (1) "the issue of disability is reserved to the Commissioner"; (2) he did not assess any specific functional limitations or capabilities; (3) "his treating records document generally normal findings with" some exception (thus providing an inconsistency with substantial evidence); and, as discussed, (4) "[t]he record does not document any objective findings which would prevent the claimant from performing the established [RFA]." AR at 22. Like for Dr. Schreiber, the ALJ provided permissible reasons to not be bound by a treating physician's medical opinion. *See* 20 C.F.R. § 416.927(c)(2) & (d). Further, it is important to be clear which of Dr. Vitale's opinions the ALJ rejected—only "that [Plaintiff] could not work," AR at 22, an issue on which the SSA does "not give any special significance to the source," 20 C.F.R. § 416.927(d)(3). On issues not reserved to the Commissioner, the ALJ analyzed evidence provided by Dr. Vitale and accounted for the associated limitations in Plaintiff's RFA. *See* AR at 19-22. Accordingly, he was not in error in evaluating Dr. Vitale's conclusions.

As to the relative weight given to the examining and non-examining physicians, the ALJ once again relied on permissible justifications for the various weights afforded. Examining Dr. Eyassu's opinion received some weight. AR at 23. However, because it was not specific, it did not form the basis of the ALJ's Decision. Consulting Dr. Jose Rabelo's opinion received great weight, as he provided a detailed evaluation of the evidence, has expertise in the applicable rules and regulations, and his opinion was supported by clinical findings, longitudinal treatment, and overall medical history. *Id.* Dr. Andrew Pyzybyla's opinion received great weight too, as it was consistent with Dr. Rabelo's. *Id.* Once again, these were permissible reasons for the ALJ to credit the various opinions differently than the SSA's "general" practice. *See* 20 C.F.R. 416.927(c)(1)-(2), (3) (the weight given to non-examining sources "will depend on the degree to which they provide supporting explanations for their medical opinions"), (c)(4) ("the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"), (c)(6) ("the amount of understanding of our disability programs and their evidentiary requirements that a medical source has . . . and the extent to which a medical source is familiar with the other information in your case record are relevant factors").[1]

---

[1] Plaintiff also raises that "Drs. Golin, Robelo, Porter, and Pryzbyla made their decisions at the pre-reconsideration and reconsiderations levels," and thus "[t]heir decisions might have been different if they had access to the medical documentation" later submitted. Mot. at 40. However, Plaintiff fails to explain how that would be the case or otherwise support his bald assertion. Accordingly, the Decision will not be reversed on that basis.

### 4. *Disabled Under the Grids*

Plaintiff argues that he is "unable to perform any kind of work in the national economy. However, if for arguments sake[,] it could be said that [Plaintiff] could perform sedentary work[,] he would be disabled under grids 201.09." Mot. at 41.

Plaintiff concedes that if he could perform light work, he would not be disabled under the grids. *Id.* As discussed above, there is no reason to disrupt the ALJ's determination that Plaintiff is capable of the RFA assigned. *See supra* Part II.C.1. Accordingly, he is not disabled under the grids, and the Decision will not be overturned.

### 5. *"Good Cause" for Remand*

Petitioner's final argument is that there is "good cause" to remand this matter because the ALJ "erred in finding that [Plaintiff] had the [RFA] to do light work." Mot. at 42. As the ALJ made no such error, *see supra* Part II.C.1, the Court rejects this argument.

## III.    CONCLUSION

For the reasons set forth above, Plaintiff's appeal of Defendant's ruling that he is not disabled is **DENIED**. An appropriate order follows.

Date: November **/8,** 2019                          WILLIAM J. MARTINI, U.S.D.J.